**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**COLE MORIN,**<br><br>**Defendant.** | **Case No. 25-10087-05-JWB** |

**UNITED STATES' AMENDED MOTION FOR STAY AND REVOCATION OF MAGISTRATE JUDGE'S ORDER OF RELEASE**
**(Pursuant to 18 U.S.C. § 3145(a) and D.Kan.Rule 72.1.4[e])**

The United States seeks revocation of the order of release issued by Judge Severson on Friday, October 10, 2025. Release was stayed until Tuesday, October 14, 2025, until 9:00 a.m.

Pursuant to Federal Rule of Criminal Procedure 59, the United States has 14 days to file its objection to the magistrate judge's findings and recommendations. This appeal is timely. This Court's review is *de novo*. *See United States v. Cisneros*, 328 F.3d 610, 616, FN. 1 (10th Cir. 2003).

## I. Authority for Detention

Authority to request detention arises from several subsections of the Bail Reform Act. Detention is authorized pursuant to 18 USC § 3142(f)(1)(A), as Sexual Exploitation of a Child – Production of Child Pornography is a crime of violence as that term is defined in § 3156(a)(4)(C) which specifically lists Chapter 110 offenses. Detention would otherwise be authorized pursuant to 18 USC § 3142(f)(1)(E) as the offense involves minor victims. Notably, there is a *presumption of detention* that applies as to pursuant to 18 USC 3142(e)(3)(E).

## II. Factual Background

The investigation in this case begins with co-defendant, William Bright. On June 18, 2025, Bright sent a Facebook friend request to an undercover law enforcement account purporting to be a 15-year-old girl. Bright ultimately propositioned the child for sex. Bright then made plans to meet up with the child at the Pilot Fuel Truck Plaza in Newton, Kansas and was arrested. A search warrant was obtained for Bright's phone. Located in a password protected secure folder were numerous images of nude Minor Victim 1 (MV1) who was 13-14 years old at the time. Also, located were extensive electronic communications between Bright and MV1 documenting sexual exploitation and production of child pornography. In addition to communications between Bright and MV1, investigators also located concerning Facebook communications indicating that Angela Jones, who is another co-Defendant in this case, and who is an individual who had custody and control of MV1, was knowingly permitting and assisting Bright and other adult males in producing and receiving child pornography with MV1. Investigators obtained a search warrant for both Jones and MV1's devices.

During the analysis of MV1's cellular telephone extraction, messages recovered by the forensic extraction document Morin's communication with MV1 beginning on or about April 25, 2025. These messages document Morin's grooming process with MV1. Morin calls MV1 "baby", "babe", "wife", "wifey" and "mommy", tells her she is sexy, and how much he loves her, even though there is approximately a 7-year age difference. The following text message communication, which took place on or about May 2, 2025, was located by investigators on MV1's cellular telephone:

- MORIN: I bet you won't show me your tits
- MV1: I can
- MORIN: I bet you won't
- MORIN: I'm horny right now baby
- *Investigators can see a picture message is sent shortly thereafter, containing an image of MV1 from the waist up, exposing her nude breasts.
- MORIN: Yes baby
- MORIN: I bet you won't show me your pussy baby
- *Investigators can see a picture message is sent shortly thereafter, containing an image of MV1 standing in front of the camera, wearing no pants and/or underwear with her vagina exposed.
- MORIN: Yes sexy mommy

The following Facebook Message communication, which took place on May 06, 2025, was located on MV1's cellular telephone:

- MORIN: I bet you won't show me something below baby
- MORIN: I bet you won't show me anything
- MV1: I can
- * Investigators were able to see a 1 hour, 34 minute and 28 second video call from MORIN to MV1 occurred.

The following Facebook Message communication, which took place on May 10, 2025, was located on MV1's cellular telephone:

- MORIN: I bet you won't show me your pussy baby

- MV1: I don't want to make you horny then what you all ready are because of me
- MV1: I am not fine looking

The following Facebook Message communication, which took place on May 11, 2025, was located on MV1's cellular telephone:

- MORIN: Can you show me your pussy please wife

The following Facebook Message communication which took place on May 14, 2025, was located on MV1's cellular telephone:

- MORIN: Take your shirt off
- MORIN: Make it cum for daddy

Investigators were not able to locate any images sent in this message exchange

The following Facebook Message communication, which took place on May 16, 2025, was located on MV1's cellular telephone:

- MORIN: I love you baby girl
- MV1: I love you to baby boy

Investigators can see a picture message is sent from MV1, where MV1 is not wearing a shirt and/or bra and her nude breasts are exposed.

The following Facebook Message communication, which took place on May 17, 2025, was located on MV1's cellular telephone:

- MV1: I am getting ready to get in the tub I will call you when I get out
- MORIN: Send me pictures on Snapchat when you are done
- MV1: Ok I will do that baby

Investigators can see a picture message is sent from MV1, where MV1 is standing nude in front of the camera. MV1's breasts and vagina are exposed.

The following Facebook Message communication, which took place on June 29, 2025, was located on MV1's cellular telephone:

- MV1: If you want to call me you can I'll just be in the shower
- *Investigators can see a message was sent from MV1, but the content of the message is not available
- MORIN: Yes baby
- * Investigators can see a 1 minute, 56 second video call is placed from MORIN to MV1.
- *Investigators can see a picture message is sent from MV1 showing MV1 nude. MV1 is positioned in front of the camera, on her hands and knees. MV1's breasts and pubic area are visible.

On September 30, 2025, Defendant was arrested pursuant to a federal arrest warrant following the Grand Jury's indictment in this case. After being advised of his rights under Miranda, Defendant made statements and admissions to investigators, to include the following:

- MORIN admitted being sexual attracted to MV1.
- MORIN admitted being in romantic relationship with MV1.
- MORIN admitted to wanting to see images of MV1 but being "uncomfortable" asking stating he was uncomfortable because MV1 was 14 years old, and he was 21 years old.

Defendant was indicted on September 3, 2025. At a detention hearing on October 10, 2025, Magistrate Judge Severson ordered his release but stayed the order. This appeal follows.

This Court should reverse and find the presumption of detention should stand and there is no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community.

## III. Factors Court Must Consider

This Court's consideration of the detention issue is guided by 18 U.S.C. §3142(g), which lists several factors for the Court to consider. These include:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence… or involves a minor victim;
>
> (2) the weight of evidence against the person;
>
> (3) the history and characteristics of the person, including... employment… past conduct… criminal history… and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending… completion of sentence;
>
> (4) the nature and seriousness of the danger to any person or the community posed by the person's release. [1]

Each of these factors, and all of them in combination, weigh heavily in favor of detention in this case. Moreover, as noted above, there is a presumption of detention that applies in this case.

Under § 3142(g)(1), this Court is expressly directed to consider the nature and circumstances of the offense charged, including whether the offense is a crime of violence (it is) or involves a minor victim (it does). This is particularly egregious in this case, which involves the production of child pornography at the direction of this defendant.

Under § 3142(g)(2), the weight of the evidence is overwhelming. The evidence includes the defendant's admissions as well as evidence on the minor and defendant's phones. The weight of the evidence strongly favors detention.

---

1 Of note, the magistrate court found that all 4 factors weighed in favor of detention. Nevertheless, the defendant was ordered released because of his release plan

Under § 3142(g)(3), the court must expressly consider the history and characteristics of the defendant. Here, the defendant has an incredibly concerning allegation concerning his conduct as a juvenile. While the government recognizes there was not a formal adjudication, the nature of the offense is important for the court to consider. In 2018 when the defendant was 14 years old, the grandmother of his half siblings reported to police that Defendant had been caught sucking his younger brother's penis approximately 2 years prior. Defendant had 2 younger brothers who were aged 5 and 8 years old at the time of the report. The report claimed that the victim was the 8-year-old, who would have been 6 at the time. The grandmother reported that since then, the parents had implemented "safety measures" so that Defendant was not left alone with any of his siblings. The grandmother reported that Morin had recently been caught looking at pornography, which was an ongoing problem. The grandmother reported that Defendant had counseling but that it did not help because Defendant would lie and tell the counselors what they wanted to hear.

The mother of the siblings then came to the police station and reported that 4 years previously, the Defendant was caught sucking her young son's penis. Defendant's father also confirmed that Defendant was caught sucking on the young brother's penis. Defendant's father stated Defendant was in counseling, but it did not help and that Defendant had a problem with lying and stealing. The victim was interviewed and said that Defendant touched him in his "bad spot." The victim stated it happened more than once. The victim stated Defendant put his mouth on his "bad spot" but then later denied that happening. The victim also stated that the Defendant touched his butt inside his clothes and put his finger in his butt. The victim (who was in first grade at the time of the interview) said that Defendant showed him pictures on the television of men and

women without clothes on and that the victim did not feel safe around the Defendant because Defendant did "disgusting stuff."

Defendant was Mirandized and interviewed with the consent of his father. Defendant claimed to have been touched inappropriately by an older brother. Although initially denying the fact that he touched the minor victim, Defendant later admitted to touching the minor victim, but claimed it was only over his clothes. Defendant later claimed that the minor victim pulled his pants down and put his mouth on it. Defendant later admitted that he touched the minor victim's inappropriate area and later said he was once caught by his dad "red handed" in the hallway when his pants were on, but the minor victim's pants were off. When asked why the minor victim would touch the Defendant, Defendant claimed the minor victim would have learned the behavior from him. Defendant then said if the minor victim said it happened then it must have happened.

Although a juvenile at the time, this is an incredibly serious allegation that is supported by the statements of the family and the Defendant himself. It shows that he is a repeat and dangerous sex offender and is a danger to the community.

The United States contends the defendant's characteristics outweighs his lack of official criminal history. The factor favors detention.

Under § 3142(g)(4), the Court is to consider the nature and seriousness of the danger to any person or the community what would be posed by the defendant's release. "The concern about safety is to be given a broader construction than the mere danger of physical violence." *United States v. Gilliard*, 722 F. App'x 818 [2018 WL 660152, at *3 ] (10th Cir. 2018). "Safety of the community 'refers to the danger that the defendant might engage in criminal activity to the detriment of the community.'" *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989)

(quoting Comprehensive Crime Control Act of 1984, Senate Report No. 98-225, at 3195.). In addition, "[t]he concern about safety is to be given a broader construction than the mere danger of physical violence," so the threat of continued drug trafficking can constitute a danger to the community. *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (per curiam). While the above cases refer to the dangers associated with drug trafficking, they would no doubt apply with equal (or greater) force if the word "drug" were replaced with "child pornography."

In this case, the defendant's crime involves the production of child pornography. The seriousness of the danger posed by these crimes, is highlighted by: 1) the 15 year mandatory minimum imposed for the production of child pornography; 2) the fact that a presumption of detention applies; 3) the repeated direction to consider detention for these charges as either crimes of violence or otherwise involving minor victims; and 4) the fact that most judges will not review the images or videos because they find them abhorrent. The fact that the nature of the defendant's offense is so horrific and abhorrent, and necessarily involved actual harm to minor victims, weighs heavily in favor of detention.

More generally, the danger posed by the defendant is considerable. The Defendant's plan is to return to the very location where he committed these crimes in the first place. He is supposed to live in a home with vulnerable people. Even his own release plan suggests 24-hour monitoring. If the Defendant needs 24-hour monitoring – which the government believes he does – then the only effective way to accomplish that is with detention. This Court cannot be reasonably assured that the defendant will abide by any set of conditions the Court might impose.

In light of the overwhelming evidence in combination with the substantial penalties, the defendant may be strongly motivated to flee the jurisdiction rather than face the charges.

There is no set of conditions that can ameliorate the concerns raised in this case. US Probation is a wonderful institution that works incredibly hard. But, it is not physically equipped to detect unauthorized internet access – the "computer monitoring" done by US Probation merely checks usage of a known computer at a known location, relying largely on the notion that if they see appropriate use on that computer, there must not be inappropriate use elsewhere. Moreover, US Probation is not able to monitor every type of computer or operating system, further limiting the utility of that "condition." Importantly, US Probation does not have capacity or ability to forensically check Wi-Fi routers or modems to detect unauthorized devices. In short, despite their best efforts[2] and intentions, US Probation is not able to *effectively* supervise the dangers and risk associated with this type of defendant. The reality of what supervision is able to do is another concern this Court should consider, and that reality weighs in favor of the defendant's detention.

## IV. Conclusion

For the foregoing reasons, the United States requests this Court order the defendant detained pending trial.

Respectfully submitted,

RYAN A. KRIEGSHAUSER
United States Attorney

s/ Molly Gordon
MOLLY GORDON, #23134
Assistant United States Attorney
District of Kansas
301 N. Main, Suite 1200
Wichita, Kansas 67202
Tel.: (316) 269-6481
Fax: (316) 269-6484
molly.gordon@usdoj.gov

2 This is not because US Probation does not *want* to do these things, but because they are not *able* to do these things through want of technological resources, training, or caseload.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties.

s/ Molly Gordon
MOLLY GORDON
Assistant United States Attorney