IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FILED
U.S. District Court
District of Kansas

OCT 01 2026

Clerk, U.S. District Court
By_______ Deputy Clerk

UNITED STATES OF AMERICA,

Plaintiff,

v.

ANGELA JONES,

Defendant.

Case No. 25-10087-JWB-02

## PLEA AGREEMENT

The United States of America, by and through Assistant United States Attorneys Molly Gordon and Ola Odeyemi, and the defendant, Angela Jones, personally and by and through her counsel, James Campbell, hereby enter into the following Plea Agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure:

1. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count 6 of the Second Superseding Indictment charging a violation of 18U.S.C. § 2251(b) and (e), that is, Production of Child Pornography. By entering into this Plea Agreement, the defendant admits to knowingly committing the offense, and to being guilty of the offense.

The defendant understands that the maximum sentence which may be imposed as to Count 6 of the Second Superseding Indictment to which she has agreed to plead guilty is not less than fifteen (15) years nor more than thirty (30) years of imprisonment, a fine of up to $250,000.00, a term of supervised release of up to life and not less than (5) years, a $100.00 mandatory special assessment, a $5,000.00 assessment pursuant to 18 U.S.C. § 3014, a $50,0000 assessment pursuant to 18 U.S.C. § 2259A(a)(3), restitution and forfeiture.

2. **Factual Basis for the Guilty Plea.** The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

In July of 2025, an investigation into the attempted enticement and coercion of minors lead to the arrest of co-defendant Bill Bright and the seizure of Bright's phone. Law enforcement found images and messages concerning Minor Victim 1 (MV1) on Bright's phone. Investigators then seized MV1's phone as well as MV1's guardian's phone. A review of those devices led to the discovery of defendant, Angela Jones, and her role in permitting and assisting others to engage in conduct for the purpose of producing child pornography with MV1. Jones had custody and control of MV1. Further, MV1 had attained the age of 12 years but had not attained the age of 16 years at the time of the production of the Child Sexual Abuse Material (CSAM).

The investigation showed that Jones allowed co-defendant Bright to engage in conduct for the purpose of producing child pornography with MV1. Investigators found SMS and Facebook messenger conversations between Bright and Jones beginning 10/13/2023.
On a chat between Bill Bright and MV1, the following occurs on April 23, 2024:

- Bright: I want you to ask ur mom if she thinks I'd like it if you was to send some naked pix of you to me. To see wat she says . . .just curious
- MV1: She says yes that I can do picture of me naked

Another specific example of a Facebook group chat was dated 6/24/2024 to 7/6/2024. The participants were MV1, Jones, and Bright. Jones and MV1 discussed the two of them having sex with Bright. On 4/19/2025, Jones told Bright that MV1 had created a new Facebook account, described MV1's profile picture, and requested that Bright add MV1's new account on Facebook.

Within Bright's phone, law enforcement found approximately 240 CSAM images and 3 CSAM videos of MV1. Approximately 30+ photos of MV2 and MV3 either solo, together, or in photos with MV1 in various states of nudity (breasts and/or genitals exposed). Also, within Bright's phone, law enforcement found messages between Bright and Minor Victim 1. During those communications, on or about May 13, 2024, Bright told MV1 that MV1 had not sent him dirty texts or pictures lately. MV1 then informed Bright that MV1 was in school. Bright instructed MV1 to go to a bathroom at MV1's middle school to "show me pussy with legs spread open." MV1 then sent that image to Bright.

During an interview, co-defendant Bright stated Jones was providing MV1 to Bright and allowing her to produce nude photographs for Bright. Bright also stated that Jones sent a topless photograph of herself and of MV1. Bright stated he told MV1 to ask Jones if MV1 could send nude photographs to him—MV1 told Bright that Jones had told MV1 that MV1 could send him nude photographs. Bright also recalled that as time progressed and MV1 was sending more nude photographs,

Jones would contact him and ask if MV1 was still sending him pictures. Bright would respond that he was receiving nude photographs and Jones would ask Bright, "well what did you think about them?" Jones also asked Bright, "is [MV1] anything like me?" According to Bright, Jones approved of MV1 having sex with Bright if Jones was present or participated. Bright and Jones discussed getting a motel room together, along with MV1.

The investigation showed that Jones allowed co-defendant Potts to engage in conduct for the purpose of producing child pornography with MV1. Investigators located multiple Facebook communication between Potts and Jones. These communications documented Potts asking Jones if MV1 could communicate with Potts and send Potts nude pictures. Potts tells Jones that he will make sure it goes no farther than pictures and that he will not "touch [MV1]". Jones indicates in these communications that Jones will allow Potts to continue to communicate with MV1 and will allow MV1 to send Potts nude photographs. Investigators also located a Facebook group chat between Potts, Jones and MV1. That group chat documented all three discussing MV1 sending nude photos to Potts. Jones tells MV1 it is ok to send Potts nude pictures, if MV1 wants. Subsequently, MV1 sends nude photographs of herself to Potts.

Within Pott's phone, law enforcement located numerous pictures of MV1 fully nude and topless.

During an interview, Potts stated:

- Potts initially met Jones and MV1 at Pott's father's funeral in February 2025.
- Potts was certain that Jones knew that MV1 was sending him nude images because he had spoken with Jones about it on numerous occasions both via Messenger and Facebook Live.
- Potts recalled that MV1 was concerned that MV1 would get in trouble for sending Potts nude images. Potts recalled communicating with Jones and MV1 over a Messenger group chat. During that chat, Potts asked Jones to tell MV1 that she was allowed to send nude pictures to him. Potts recalled that Jones told MV1 that she would not get into trouble if she sent nude images to Potts.
- Potts stated he received a video call on Messenger from Jones. Potts stated he saw MV1 topless and watched Jones fondle MV1's breasts. Potts estimated this video lasted 1 minute.
- Potts recalled receiving a voice call from Jones, during which Jones offered MV1 to Potts. Potts stated Jones told Potts it would cost him $100 for three hours, and $300 for the entire day. Potts stated that Jones said that she would allow MV1 to have sex with Potts. Potts said Jones told Potts he could take sexual pictures or videos of MV1. Per Potts, Jones told Potts that she could have someone accompany MV1 to help Potts capture these pictures/videos.

Defendant Jones used her phone to engage in the production of child pornography. Her phone was not manufactured in the state of Kansas. Jones also used the internet, an instrumentation of commerce, to engage in the production of child pornography as charged in count 6.

3. **Application of the Sentencing Guidelines.** The parties request that the Court apply the United States Sentencing Guidelines (Guidelines) to calculate the applicable sentence and impose a sentence consistent with the Guidelines. The defendant agrees to waive all constitutional challenges to the validity of the Guidelines. The defendant understands and acknowledges that the Court will find, by a preponderance of the evidence, the facts used to determine the offense level, and in making its findings, that the Court may consider any reliable evidence, including hearsay. Nothing in this section prevents the parties from filing objections to the Presentence Report prepared by the United States Probation Office, or from arguing the application of specific sections of the Guidelines. The parties agree that the Court will determine the final Guideline range. The parties understand this Plea Agreement binds the parties only and does not bind the Court.

4. **Relevant Conduct.** The parties have agreed to the application of the Guidelines. Therefore, the defendant agrees that the conduct charged in any dismissed counts, as well as all other uncharged related criminal activity, will be considered as relevant conduct for purposes of calculating the offense level for the count(s) of conviction, in accordance with United States Sentencing Guidelines (U.S.S.G.) § 1B1.3.

5. **Government's Agreements.** In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas agrees:

(a) to dismiss the remaining counts of the charging documents at the time of sentencing;

(b) to not file any additional charges against the defendant arising out of the facts forming the basis for the present Second Superseding Indictment;

(c) to recommend the defendant receive a two (2) level reduction in the applicable offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. In addition, if her offense level is 16 or greater, prior to any reduction for acceptance of responsibility, and the Court finds she qualifies for a two-level reduction, the

United States will move at the time of sentencing for an additional one-level reduction for acceptance of responsibility because she timely notified the government of her intention to enter a plea of guilty; and

(d) to join the defendant in recommending a sentence at the low end of the applicable Guideline range. In other words, the defendant cannot request a downward variance.

The United States' obligations under this Paragraph are contingent upon the defendant continuing to manifest an acceptance of responsibility. If the defendant denies or gives conflicting statements as to her involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct, the United States reserves the right to petition the Court for a hearing to determine if she has breached this Plea Agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this Plea Agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this Plea Agreement's terms, the United States shall not be bound by this Paragraph, and may pursue any additional charges arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this Plea Agreement, she understands and agrees that all statements she made, any testimony she gave before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against her in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410,

or any other federal rule that pertains to the admissibility of any statements she made subsequent to this Plea Agreement.

6. **Sentence to be Determined by the Court.** The defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot and has not made any promise or representation as to what sentence she will receive.

7. **Forfeiture of Assets.** The defendant agrees to the forfeiture of the following property to the United States: (1) a Motorola Moto G; IMEI 352467651221843; s/n ZY32L5GF99 and (2) a Motorola Moto G; IMEI 352467651221009; s/n ZY32L5GDQF. The defendant agrees that this property was used or intended to be used to commit or to promote the commission of the commission of Count 6. The defendant knowingly and voluntarily waives her right to a jury trial regarding the forfeiture of property, and voluntarily waives all constitutional, legal and equitable defenses regarding the forfeiture of property and withdraws any administrative claim or petition for remission regarding the property. The defendant acknowledges and agrees that the forfeiture of this property shall not be deemed an alteration of her sentence or this agreement, and shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon her in addition to forfeiture. Additionally, the defendant agrees to the immediate entry of the Preliminary Order of Forfeiture, and agrees to sign any and all documents necessary to effectuate the forfeiture and transfer of her interest and possession of the property identified in this paragraph to the United States prior to the imposition of sentence.

8. **Identification of Assets and Agreement Concerning Monetary Penalties.** In order to facilitate the collection of criminal monetary penalties, including restitution, fines, and assessments, to be imposed in connection with this case, defendant agrees as follows:

(a) Payments toward anticipated criminal monetary penalties made prior to sentencing will be held by the Court Clerk and then applied to the criminal monetary penalties following entry of the Judgment in a Criminal Case. If the

amount paid prior to sentencing exceeds the amount ordered at sentencing, the United States Attorney's Office will request language to be included in the Judgment in a Criminal case to authorize the Court Clerk to refund any overpayment to defendant. Payments made prior to sentencing can be sent to the following address and should reference defendant's name and case number:

Clerk, U.S. District Court
401 N. Market, Room 204
Wichita, Kansas 67202

(b) Defendant agrees not to encumber, transfer, or dispose of any monies, property, or assets under defendant's custody or control of more than $2,000 in value, without written approval from the United States Attorney's Office.

(c) Within 30 days of any request by the United States Attorney's Office, defendant agrees to execute a financial statement and provide supporting documentation. defendant expressly authorizes the United States to obtain a credit report before sentencing. Further, defendant agrees to execute authorizations for the release of all financial information requested by the United States.

(d) Defendant agrees the United States Attorney's Office may, pursuant to F.R.Civ.P. Rule 45, subpoena any records it deems relevant to conduct a full financial investigation of defendant's assets prior to sentencing.

(e) Defendant authorizes the United States to file a Notice of Lis Pendens prior to judgment on any real property in which defendant holds an ownership interest.

(f) Defendant agrees that all information defendant provides to the United States Probation Office or independently obtained by the United States Probation Office may be provided to the United States Attorney's Office. Likewise, all information defendant provides to the United States Attorney's Office or independently obtained by the United States Attorney's Office in the course of its financial investigation of defendant may be provided to the United States Probation Office.

(g) All monetary penalties (including any fine, restitution, assessment, or forfeiture judgment) imposed by the Court, will be due and payable immediately and subject to immediate enforcement by the United States. Any payment schedule set by the Court is a minimum schedule of payment and not a limitation on the United States to enforce the judgment.

(h) Defendant waives any requirement for demand of payment on any criminal monetary penalties or forfeiture judgment entered by this Court.

(i) Defendant waives the administrative requirements of the Treasury Offset Program, including the requirement of default.

(j) If defendant posted funds as security for defendant's appearance in this case, the defendant authorizes the Court to release the funds posted the Court Clerk to be applied to the criminal monetary impositions at the time of sentencing.

(k) Defendant understands she has an obligation to notify the court and the United States Attorney's Office of any material change in defendant's economic circumstances that might affect defendant's ability to pay restitution pursuant to 18 U.S.C. § 3664(k).

(l) Defendant understands that failure to comply with the provisions of this section may constitute a breach of this plea agreement, as outlined in Paragraph 5, above.

9. **Withdrawal of Plea Not Permitted.** The defendant understands that if the Court accepts this Plea Agreement, but imposes a sentence with which she does not agree, she will not be permitted to withdraw her guilty plea.

10. **Payment of Special Assessment.** The defendant understands that a mandatory special assessment of $100.00 per count of conviction will be entered against her at the time of sentencing. The defendant agrees to deliver to the Clerk of the United States District Court payment in the appropriate amount no later than the day of sentencing. The defendant has the burden of establishing an inability to pay the required special assessment. The parties acknowledge that if the Court finds the defendant is without resources to pay the special assessment at the time of sentencing, the Court may allow payment during her period of incarceration.

11. **Payment of JVTA Assessment.** The defendant understands that an assessment of $5,000.00 shall be imposed for Count 6 pursuant to the JVTA (18 U.S.C. 3014), unless the Court determines the defendant is indigent. The defendant has the burden of establishing indigency.

12. **Payment of Assessments in Child Pornography Cases.** The defendant understands that, in addition to any other criminal penalty, restitution, or special assessment authorized by law, the Court may impose an additional assessment of not more than $50,000.00

per count for the defendant's conviction under Count(s) pursuant to the AVAA (18 U.S.C. 2259A(a)(1-3)). The defendant also understands that the imposition of an assessment under this section does not relieve her of (nor entitle her to reduce the amount of) any other penalty by the amount of the assessment.

13. **Waiver of Appeal and Collateral Attack.** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, her conviction, or the components of the sentence to be imposed herein, including assessments and restitution, as well as the length and conditions of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords her the right to appeal the conviction and sentence imposed. The defendant further waives her right to appeal the Court's decision to revoke her supervised release and/or probation, as well as any sentence imposed upon revocation of probation or supervised release. The defendant also waives any right to challenge her sentence, or the manner in which it was determined, or otherwise attempt to modify or change her sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court departs or varies upwards from the sentencing Guideline range that the Court determines to be applicable. However, if the United States exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a). Notwithstanding the foregoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

14. **FOIA and Privacy Act Waiver.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552. The defendant further waives any rights conferred under the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to this case.

15. **Full Disclosure by United States.** The defendant understands the United States will provide to the Court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case. This may include information concerning her background, character, and conduct, including the entirety of her criminal activities. The defendant understands these disclosures are not limited to the count to which she is pleading guilty. The United States may respond to comments she or her attorney makes, or to positions she or her attorney takes, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this Plea Agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the Court and the United States Probation Office.

16. **Megan's Law/Adam Walsh Act Notice.** The defendant has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student. The defendant

understands that she must update her registrations not later than three business days after any change of name, residence, employment, or student status. Likewise, the defendant must provide information required by the Sex Offender Registration and Notification Act relating to intended travel in foreign commerce, and must do so prior to engaging in, or attempting to engage in, such international travel in foreign commerce. The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

17. **Parties to the Agreement.** The defendant understands this Plea Agreement binds only her and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

18. **Voluntariness of Guilty Plea.** The defendant has had sufficient time to discuss this case, the evidence, and this Plea Agreement with her attorney and she is fully satisfied with the advice and representation her attorney provided. Further, the defendant acknowledges that she has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this Plea Agreement supersedes any and all other agreements or negotiations between the parties, and unless subsequently supplemented in writing with the joint approval of the parties, this Plea Agreement embodies each and every term of the agreement between the parties. The defendant acknowledges that she is entering into this Plea Agreement and is pleading guilty because she is guilty. She further acknowledges that she is entering her guilty plea freely, voluntarily, and knowingly.

19. **Restitution.** The defendant acknowledges that her conduct involved the Production of child pornography, for which restitution is authorized and mandated pursuant to 18 U.S.C. § 2259. At this time, no restitution has been requested by either the minor or the minor's representatives. The defendant understands and agrees that, if the victim or the victim's

representatives submit a request for restitution, she will pay for the full amount of the victim's losses, as contemplated in 18 U.S.C. § 2259(c)(2), as determined by the Court.

Molly Gordon/Ola Odeyemi
Assistant United States Attorney

Date: 10/1/26

Katie Andrusak
Assistant United States Attorney
Supervisor

Date: 10/1/2026

Angela Jones
Defendant

Date: 10/1/2026

James Campbell
Counsel for defendant

Date: 10/1/2026